IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 14-cv-02927-RBJ

TIMOTHY THOR,

      Plaintiff,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

      Garnishee/Defendant.

---

## ORDER

---

This matter is before the Court on defendant's Motion for Summary Judgment, ECF No. 41. For the reasons discussed in this Order, defendant's motion is granted in part and denied in part.

## I.    FACTS

In the summer of 2010, Bruce Bramlett borrowed a horse from his friend and fellow resident of Routt County, Colorado, Garrett Wiggins. ECF No. 48-8 at ¶ 4; ECF No. 4 at ¶ 2. Bramlett borrowed the horse to go on a backpacking trip in Eagle County, Colorado. ECF No. 48-8 at ¶ 4. Unfortunately, during the backpacking trip, Bramlett lost the horse. *Id.* at ¶ 5. When Bramlett returned to Routt County, he promptly informed Wiggins of what had happened. *Id.* Together Bramlett and Wiggins made several trips back to Eagle County to search for the missing horse, but they were unable to find it. ECF No. 42-1 at 4.

1

In the fall of 2010, plaintiff Timothy Thor and his friend, Jack Borah, went elk hunting in Eagle County. ECF No. 4 at ¶¶ 8–9. They were riding their horses towards a clearing when they spotted Wiggins' lost horse. *Id.* at ¶ 9. Wiggins' horse subsequently approached Thor and began "kicking and wheeling," injuring Thor's leg. *Id.* at ¶ 10.

Consequently, Thor sued Wiggins and Bramlett in state court. *Id.* at 1. Bramlett defaulted, and on September 25, 2014, the court entered a default judgment against him for $904,677.22 plus post-judgment interest and costs. ECF No. 5 at 3. In an effort to collect the judgment, Thor requested and obtained from the state court a writ of garnishment which was then served on defendant American Family Mutual Insurance Company ("American Family"), Wiggins' "farm/ranch" insurer. ECF No. 1-6. Thor's theory is that Bramlett is insured under Wiggins' Farm/Ranch Policy (the "Policy"), that the Policy provides indemnity against Bramlett's liability as established by the default judgment, and that Thor can therefore garnish American Family's "debt" owed to Bramlett to satisfy the judgment. ECF No. 48. American Family removed the garnishment proceeding to this Court on the basis of diversity jurisdiction. ECF No. 1.

American Family now moves for summary judgment, asking the Court to determine as a matter of law that (1) Bramlett was not an insured at the time of the incident, and (2) even if Bramlett was an insured, the "Non-Resident Insureds" exclusion precludes coverage. ECF No. 41. Thor asserts that (1) Bramlett was an insured because he was legally responsible for Wiggins' horse, and (2) even if the Non-Resident Insureds exclusion precludes Personal Liability coverage, it does not preclude Farm Liability coverage. ECF No. 48. Alternatively, Thor argues that American Family waived its right to contest coverage in this case. *Id.* at 4–8, 12–13.

## II.     STANDARD OF REVIEW

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The Court will examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Concrete Works of Colorado, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

## III.     ANALYSIS

### A.  Coverage

There are two forms of coverage in the Policy that are potentially implicated by this case, "Coverage D – Farm Liability" and "Coverage E – Personal Liability." ECF No. 14-1 at 23. Assuming without deciding that Bramlett is an insured for purposes of the Personal Liability coverage, the parties now agree that an exclusion bars coverage. ECF No. 42-1 at 2; ECF No. 48 at 16. The Non-Resident Insureds exclusion states, "We will not pay for damages due to bodily injury or property damage under Coverage E – Personal Liability for any insured who resides off the insured premises." ECF No. 14-1 at 23. Because Bramlett has always resided off the insured

premises, the Non-Resident Insureds exclusion precludes Personal Liability coverage for his

liability.  ECF No. 42-1 at 2; ECF No. 48 at 16.

The questions before the Court, therefore, are whether there is coverage under the Farm

Liability coverage part and whether American Family has waived its right to deny such

coverage.  I answer the first question "no."  However, I conclude that the waiver issue presents a

genuine and material dispute of fact that precludes summary disposition of that issue.

In interpreting an insurance contract, courts must give effect to the intent and reasonable

expectations of the contracting parties.  *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 801

(Colo. 2007).  "When the terms of an insurance policy are not defined, we give those words their

plain, ordinary meanings and interpret them 'according to the understanding of the average

purchaser of insurance.'"  *Roinestad v. Kirkpatrick*, 300 P.3d 571, 574–75 (Colo. App. 2010),

*rev'd sub nom. on other grounds*, *Mountain States Mut. Cas. Co. v. Roinestad*, 296 P.3d 1020

(Colo. 2013).  Courts must enforce the plain language of the policy unless it contains an

ambiguity.  *Hoang*, 149 P.3d at 801.  "We determine ambiguity based on the facts and

circumstances of the particular case before us."  *Roinestad*, 300 P.3d at 575 (citing *TerraMatrix,

Inc. v. U.S. Fire Ins. Co.,* 939 P.2d 483, 487 (Colo.App.1997)).  If the policy is ambiguous, the

interpretation "which is most favorable to the insured will be adopted."  *Finding v. Ocean Acc. &

Guarantee Corp.*, 177 P. 142, 143 (Colo. 1918).

In the present case, the Policy does not define "Farm Liability."[1]  ECF No. 14-1 at 20.

Therefore, the Court must give "Farm Liability" its plain and ordinary meaning.  Black's Law

---

[1] Although the Policy does not define "Farm Liability," it does distinguish "Farm Liability" from
"Personal Liability" at least twice.  *Id.*  First, for "Farm Liability" the coverage territory generally
includes the United States, but for "Personal Liability" the coverage extends to "anywhere in the world."

Dictionary defines "farm" as: (1) a noun meaning "[l]and and connected buildings used for agricultural purposes," or (2) a verb meaning "to cultivate land; to conduct the business of farming."[2] *Black's Law Dictionary* (10th ed. 2014) *available at* Westlaw.  Read broadly, the plain and ordinary meaning of "Farm Liability" coverage contemplates liability arising either (1) in connection with the farm premises or (2) in connection with farming operations.

This interpretation is consistent with the Policy as a whole.  ECF No. 14-1.  For example, "Custom Farm Work" is defined within the Policy as, "the use by the insured of any tractor, farm implement or farm machine in the *farming operation* of others[.]"  *Id.* at 19 (emphasis added).  Additionally, "Farm Employee" is defined as, "an employee . . . who . . . perform[s] duties incidental to the ownership, maintenance, operations or use of the *farm premises*."  *Id.* (emphasis added).  While these terms are not at issue here, their definitions within the Policy are consistent with the plain meaning of "farm" discussed above.  *Id.*

Thor suggests that the average purchaser of insurance would understand "Farm Liability" coverage to include liability arising out of an insured's use of animals.  ECF No. 48 at 17.  I am not convinced.  "Farm Liability" coverage may include liability arising out of an insured's use of a farm animal on the farm premises or in connection with farming operations; however, it is unreasonable to conclude that "Farm Liability" coverage includes liability arising out of an insured's use of any animal for any purpose.

---

*Id.* at 19.  Second, as discussed above, the Non-Resident Insureds exclusion precludes "Personal Liability" coverage, but not "Farm Liability" coverage, for insureds who reside off of the insured premises.  *Id.* at 23.  These distinctions between "Farm Liability" and "Personal Liability" indicate that there must be some difference between the two forms of coverage; however, the scope of both forms of coverage remains undefined.

[2] The Court acknowledges that Black's Law Dictionary also defines "farm" as a noun meaning "rent" or "land for which the rent was paid."  *Id.*  Because these historical definitions are not applicable to this case, the Court does not discuss them further.

At this point in the analysis, the appropriate inquiry is whether "Farm Liability" coverage is ambiguous when applied to the facts and circumstances of this case. I conclude that it is not. Here, it is undisputed that Bramlett borrowed Wiggins' horse in order to go on a personal backpacking trip in Eagle County. ECF No. 51-3 at 4; ECF No. 48-8 at ¶ 4. It was during that trip that Bramlett lost the horse. ECF No. 48-8 at ¶ 5. Months later the lost horse, still in Eagle County, injured Thor while he was elk hunting. ECF No. 4 at ¶¶ 8–9. This had nothing to do with Wiggins' farm or farming operations. I conclude that the Policy does not provide "Farm Liability" coverage under these facts.

## B. Waiver

Thor alternatively argues that American Family waived its right to contest coverage in this case. ECF No. 48 at 12–13. In general, "the doctrines of waiver and estoppel cannot create coverage where none exists under the policy." *Mgmt. Specialists, Inc. v. Northfield Ins. Co.*, 117 P.3d 32, 37 (Colo. App. 2004); *McGowan v. State Farm Fire & Cas. Co.*, 100 P.3d 521, 526–27 (Colo. App. 2004). However, "if an insurer, with knowledge of a ground of forfeiture or noncoverage under the policy, assumes and conducts the defense of an action brought against the insured without disclaiming liability and giving notice of its reservation of rights, it may thereafter be precluded from claiming noncoverage when its conduct has prejudiced the insured." *Mgmt. Specialists, Inc.*, 117 P.3d at 37.

Thor alleges in substance that American Family assumed Bramlett's defense without reserving its rights and subsequently abandoned his case before trial. ECF No. 48 at 4–8. Bramlett testified that after being served with the Complaint, he called David Perry, an attorney employed by American Family, to seek his advice. ECF No. 48-10 at 4. Bramlett asked Perry,

"What do I need to do about [the Complaint]?" *Id.*  Perry responded, "[Y]ou really don't need to do anything about it, because we already have your statement, and we've already submitted all the necessary documents.  There's nothing for you to do." *Id.*  Bramlett was under the impression that Perry was acting as his attorney. *Id.* at 10.  He recalled Perry's stating, "I represent you . . . I've got you covered." *Id.* at 11.  It wasn't until after Bramlett learned of the entry of default judgment that John Scherling, another attorney employed by American Family, informed Bramlett that they did not represent him. *Id.* at 10.

American Family disputes most of these facts.  ECF No. 51 at 2–3.  Perry testified that he only spoke to Bramlett once.  ECF No. 51-1 at ¶ 7.  According to Perry, when they spoke, Perry specifically advised Bramlett to get his own lawyer. *Id.* at ¶ 18.  Furthermore, Perry claimed that he never told Bramlett that he represented him, nor did he advise Bramlett that there was "nothing for [Bramlett] to do." *Id.* at 3–4.  American Family admits that it did not send Bramlett a reservation of rights letter, which is consistent with its claims that it never assumed or conducted his defense.  ECF No. 51 at 6.

At this stage, there is a genuine dispute as to material facts concerning whether American Family waived its right to contest coverage in this case.  Construing the evidence in the light most favorable to Thor, a reasonable juror could conclude that American Family assumed Bramlett's defense and subsequently abandoned his case, without informing him, sometime before trial.  Consequently, there is a genuine issue for trial, and American Family's motion for summary judgment is denied as to this issue.

**IV.    ORDER**

Defendant's motion for summary judgment, ECF No. 41, is GRANTED to the extent that the Court concludes that, absent a waiver, there is no coverage under the Policy for Bramlett's liability.  The motion is DENIED with respect to the issue of waiver.  Defendant's Motion to Strike Plaintiff's Expert Disclosure of Richard Laugesen, ECF No. 31, is thereby rendered MOOT.

DATED this 7th day of December, 2015.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge